Afternoon is in re the estate of Cramsey 411 0177 for the appellant. Mr. Wright for the appellee. Mr. Staff proceed Good afternoon. May it please the court. My name is Dan Wright. I'm counsel for the appellant, Gary Calloway, who is the predecessor in interest to, I'm sorry, the successor in interest to one of the parties to the Option Agreement that is at issue in this case. And the general issue that was before the trial court was whether the option is enforceable or whether it is unenforceable for lack of consideration. And our position in the trial court was that the option dated September 22, 1999, is unenforceable for lack of consideration based upon the rule against past consideration. And the reason that the argument is cast that way is because the deed to the property was conveyed a day before the subject option was executed. The general facts, I'm sure the court is familiar with them, but just a very brief synopsis. On July 24, 1999, Michael Pavlik, in his individual capacity, executed an agreement with the sellers, the Cramsies, for the sale of the subject real estate. That agreement included an option to repurchase. However, that's not the, in the eyes of the law, that's not the person, in this case it was an entity, to whom the property was conveyed. And our position is that that agreement is irrelevant to this case because the party to that agreement, who was the purchaser, was not the ultimate party to whom the property was conveyed. And in the inquiry in respect to whether the September 22 option was supported by consideration, the only act of Golden Triangle Whitetails, who was the party from whom my client purchased the property, their only act, as the facts are applied to the law, was the execution of the September 22, 1999 agreement. Consideration having already been conveyed one calendar day prior to that, the rule against past consideration applies. Is your argument that consideration has to be exchanged simultaneously? If I buy a book at a store, I have to hand the money to the person at the same time she hands me the book? Thank you, Justice Cook. But that is not our argument. Our position, based upon Illinois precedent, is that it can't have been conveyed in the past. That I can't enter into an agreement with you and say, remember that car that I gave to you last week? In exchange for that, you're going to do this for me. Illinois law states that past consideration cannot be consideration for a future agreement. And the parties can't recycle consideration conveyed in the past to support a new agreement. And as with all general rules, or many general rules in the law, there are exceptions to those. And that is no different in this case. The two exceptions that may have, that are at least worth the Court's consideration and review, are the first two exceptions that are outlined in the Werner Agency Inc. case, which came out of the 4th District in 1985. The first exception is that the consideration was rendered at the request of the promisor. In this case, the promisor is Golden Triangle Whitetail. When I say the promisor, I'm referring to the September 22nd, 1999 agreement. So in order for that exception to apply, there would have to be facts to establish that Golden Triangle Whitetail requested that the property be conveyed to them. Do you distinguish between Golden Triangle Whitetails and Pavlik? Yes, sir. How can you do that? We distinguish between the two because our interpretation of Illinois law is that an individual who happens to be an officer of a corporation is separate and distinct from that corporation, unless there are facts to suggest that. So if I'm the president of a corporation and I want to buy something, and I write a check to the seller, and I say, oh, put it in the name of the corporation, that's not a valid deal? I think it would depend on all the facts and circumstances, Your Honor. And in the current matter, there were no facts alleged in the trial court or in the affidavit of Betsy Roderick that suggest that Michael Pavlik was acting in that capacity. For example, in Your Honor's example, if there were a written contract that was in the name of the corporation and the officer went and paid for or performed under that contract, the facts and circumstances would suggest that he was acting in his corporate capacity. There are no such facts in the current matter. We have an individual who entered into a contract, and then at the closing of that contract, conveyed the consideration that he promised to convey, and then as an accommodation to him as an individual, requested that the sellers put it in the name of a corporation. And admittedly, Your Honor, he was then and is now, as I understand, he's not my client, but was the president of that corporation. Under the terms of the agreement, the purchase agreement with Pavlik, didn't Pavlik grant the sellers the option to purchase the farm back? He did, Your Honor, and we wouldn't be here today if that contract had been completed. We're not here on the July 24th contract, but the September 22nd contract. The sellers didn't convey the property to Pavlik. And so that contract, incidentally, the party's performance acknowledges that, and that if the parties thought that there was any continued application of that July 24th agreement, there wouldn't have been a September 22nd agreement, which then granted another option from a different entity, which is the Golden Triangle Whitetails option on September 22nd, after the property had been conveyed. So based upon the law in our brief, Your Honor, we're distinguishing between Pavlik as an individual and Golden Triangle Whitetail as a separate individual in the eyes of the law. Having said that, there are cases that, if appropriate facts had been alleged or proven at the trial court, to suggest that the surrounding facts and circumstances were different, or that somehow those suggested that Mike Pavlik was acting in his capacity on behalf of Golden Triangle Whitetail when he requested, and when they closed the agreement on September 21st. Those facts weren't alleged, and we don't think that they're present in this case. That's why I think that this case is different from Your Honor's example. And I'm happy to answer any further follow-up. So our position is that the first exception does not apply because Golden Triangle didn't make any requests to have the property conveyed to them, so there was no request to the promissory. The second is that the alleged consideration, and this is an interesting exception, that the alleged consideration was of a, quote, beneficial or meritorious nature, which placed the promissory under a moral duty or obligation such that consideration for the promise will be implied. And if you just read that on its face without further inquiry, it looks as though that reads the requirement of consideration out of any contract, because I think most folks would say that if you make a promise to someone, you have a moral obligation to complete that promise, but the law requires that that promise be supported by consideration. And in preparing for oral argument today, I reviewed some secondary sources, which basically made that conclusion, but if the Court looks further, the decision of Carson v. Clark, which was before the Court's time and before my time, 1833, clarifies that exception. And in a nutshell, and this is stated in the Warner case as well, that not every benefit conferred upon an individual is deemed to create a moral duty to repay, which forms consideration of a promise. And this exception typically arises, I think, historically in cases where there have been services rendered in the past, and then there was a subsequent promise to pay, and then that promise was enforced. This is factually distinct from that situation, but the case goes on to say that, to clarify this exception, that all circumstances must be of such a nature as to presuppose a request for the benefit. And there are no circumstances in this case that would lead the Court to presuppose that Golden Triangle did anything to request the benefit other than the September 22nd agreement, and that was after the benefit had been conferred. What about Pavlik? Did he do anything to request the benefit? There is no dispute, Justice Cook, that Mike Pavlik, at the closing, requested that the sellers convey the property to Golden Triangle. That's not disputed. That's one of the facts that was in... Well, isn't that good enough? Isn't he a promisor? He is. He as an individual, Your Honor, is a promisor. And that's why the issue of the separate capacity of an individual acting in their individual capacity, as he did in the July 24th 1999 agreement, and acting in the capacity as a corporate agent or as a corporate officer. And that's a distinction that has been well settled in law for quite some time. So our position, Your Honor, is that he made that request in his individual capacity as a follow-up to the July 24th 1999 agreement, which did not in any manner reference Golden Triangle Y2. Well, are we allowing Pavlik to get away with a fraud here? He promises he's going to reconvey the property, and then he requests the property be conveyed to Golden Triangle, and then he's able to say, oh, Golden Triangle is not bounded to Y2. Well, Your Honor, I don't represent Mike Pavlik, and I wasn't there, and my client was his successor in interest. That doesn't undermine the relevance of the Court's question, however. The parties executed a second agreement, not with Mike Pavlik, but with Golden Triangle. And the plaintiffs are obligated to present proof at trial, or proof at the trial court, that they've met all the elements of a contract. And consideration is one of them. And under the requirements of the law, the rule of past consideration requires a finding that because the consideration was conveyed in the past, the rule says that once an exception applies, that the subsequent contract is invalid. And I don't know, to be honest, Justice Cook, I'm not sure that directly answers your question. I think objectively, I don't know Mike Pavlik, and I'm not sure what his intentions were. Our position is simply applying the law of consideration to these facts. The second and the third, or the first and second exceptions to the rule of past consideration I've discussed, the third and the fourth are not applicable at all. The third is, the promise is to pay a debt in due conscience. That is not, this doesn't involve a debt, such as a promise to support what this case refers to as an illegitimate child. Or, number four, the promise is founded upon an antecedent legal obligation, such as a debt, which has become barred by the statute of limitations. Not applicable in the current manner. So, the specific issue being appealed, the trial court determined that the passage of one day was not material, and therefore couldn't be appealed. The subject of application of the rule against past consideration. Illinois law does not contain any such materiality requirement, whether it's one day, one week, a month, a year. And so, our position is that that kind of... Well, there's certainly a difference between one day and a year. There is most certainly, Justice Cook. But our position is that Illinois law doesn't provide a spectrum of reasonableness or materiality. It simply says that consideration previously conveyed cannot be recycled. In many respects, this case is like a law school hypothetical, just the way that the facts played out. So, it's an interesting case, I think, for the parties, and I hope it is for the court. But our position is not that there is no difference between one day and a week or a month or a year. But that in the eyes of the law, as it's stated in the rule of past consideration, the law has not made any such distinction. And the trial court is bound to follow such precedent. The other basis for the trial court's ruling, although it wasn't very clear, the court said that it based its ruling in part on the uncontradicted affidavit of Betsy Broderick. And that affidavit contains various legal conclusions. We did not move to strike the affidavit, because we deemed the matters contained in the affidavit to be immaterial to the issues to be resolved by the court. And we didn't disagree with any facts that were in the affidavit. Because Mike Pavlik was indeed, at the time, there wasn't any facts to suggest, to support the conclusion that he was president at the time, but I don't think there's any dispute that he was. He was, in fact, president at the time, but there are no facts to suggest that he made any representations to the Kramjies about his capacity, or that there was any writing that said he was entering into this agreement in his capacity as president. And that's a crucial factual distinction in our judgment, because of the distinction that the law has made between an individual acting in his individual capacity and his corporate capacity. So there were no facts in the affidavit to allow the court to jump to that conclusion. And so the affidavit was not stricken for that reason. And even taking that into account, the court's not permitted to assume legal conclusions. Only uncontradicted facts are taken as true. So it was error to conclude that the affidavit of Betsy Ryder contained any facts, which, although uncontradicted, were not material to the issues before the court, and certainly weren't dispositive of the issues on summary judgment in our judgment. The primary issue raised in the response that plaintiffs filed was that there was a bargain for exchange of promises, and so there is consideration. And the facts upon which they based the bargain for exchange of promises are the July 24, 1999 agreement, which, as Justice Cook pointed out, Mike Pavlik made a promise to buy the property, and that promise included an option to repurchase. Because, again, because of the distinction between Mike Pavlik and Golden Triangle Whitetails under the law, Golden Triangle Whitetails had nothing to do with that promise, had nothing to do with that transaction. And so there was never a bargain for exchange of promises between the two parties to the September 22, 1999 agreement. So our position is that that agreement, and as a consequence, the plaintiffs' argument that there was this bargain for exchange of promises, lacks merit, because the July 24, 1999 agreement should not be part of the analysis, because Golden Triangle Whitetails was not referenced in the agreement, they weren't a party to it, and Illinois law says that extrinsic evidence cannot be considered where the contract is unambiguous. In our judgment, the July 24 agreement is unambiguous and does not include any reference or any obligation imposed upon Golden Triangle Whitetails. So there are no facts of record to support a bargain for exchange of promises. So for that reason, the plaintiffs' argument is without merit. Based upon the law and argument in our briefs, Your Honor, at the very least, our position is that the matter should be reversed and the court directed to bring a summary judgment in our favor based upon the lack of consideration for the option and the lack of any facts to support any of the exceptions to the rule articulated in the Werner Fourth District case in our brief. Having said that, if the court is inclined to rule otherwise, at the very least, there may be facts out there that, if the court thinks that maybe one of the exceptions applies, there were no facts alleged or contained in the record to support the finding of any such exception. So a remand for those purposes may be appropriate if the court is not inclined to find it in our favor in terms of the legal issues raised in our brief. With that, I'd take any questions and otherwise yield to Mr. Staff. Thank you, counsel. Good afternoon. May it please the court. I'm Andrew Staff, and I represent the plaintiffs, the appellees, Betsy Roderick, formerly known as Betsy Cramsey, and the estate of her former husband, Lynn Cramsey. Listening to Mr. Wright's basis of his, I think, the principle argument in that there was a lack of consideration with respect to the option, the biggest difference between the opposing counsel's argument and our argument, Mr. Wright called the purchase agreement irrelevant. The purchase agreement is very relevant. It's from this agreement where the party's intentions were initially reflected and everything flowed from this purchase agreement. The promise by the seller, the Cramseys, was, I will sell this farm at this price on the condition that you agree to give me an option to purchase it back in the future. That was the seller's promise. The promise on the other side, the buyer's promise, Mr. Pavlik, whether individually or in the capacity as president for his company, his promise at the time was, yes, I will give you an option if you sell the property, the farm, at this price. That was the whole essence of the exchange of the promises. He agreed to the option as an inducement to get them to sell the farm. So paragraph 800 of the purchase agreement is the grant, his promise to grant an option. There was a closing. Prior to the closing on the sale of the farm, at some point, and this is reflected in Betsy Roderick's affidavit, at some point, Mr. Pavlik requested that the D be titled in his company's name. I practice law with my father, Hubert Staffley of general practice in Quincy, Illinois, and we represent a lot of rural clients and we're involved in a lot of land transactions. This is a very typical scenario. We sell a lot of farmland for clients by way of auction. At the auction, the buyer will bid the property. Right after the auction, he will come forward and sign the purchase agreement. A day or two later or sometime prior to closing, that buyer will call us and say, hey, you know, I have a company and my land, my farm business, is all operated out of my company's name.  This is exactly what happened. At some point, there was a request from Mr. Pavlik to title the D in his company's name. This is reflected in the... How long did this option last? The option was for 50 years, exercisable every fifth anniversary year of that 50-year period. The affidavit of Betsy Roderick, Mr. Wright called the affidavit immaterial or not material, and that's why he gives as a reason for not filing the counter affidavit. But that point in the affidavit is very material because the large part of his argument is we have Mr. Pavlik, the person, and Mr. Pavlik, the president of the company. Well, that affidavit spells out that Mr. Pavlik, as an agent for his company, president, requested that the D be titled. So it is very material, that point in the affidavit. Most of the facts are reflected in the two principal agreements, namely the purchase agreement and then the grant of the option to purchase, that followed the day thereafter. So to reiterate, that purchase agreement is very material because the intentions of the parties were initially reflected in that and everything flowed. Pursuant to that purchase agreement, Whitetail granted the option back to Cramsey, granted the option to purchase the farm back to Cramsey. So that was part of the consideration. That was Whitetail's consideration for the bargain for exchange transaction. Whitetail never signed anything, did they? Whitetail did. Whitetail signed the option agreement. It was signed by Mr. Pavlik as president for Whitetail. So even if the court would go along with the argument made by Mr. Wright and his client that the purchase agreement was immaterial, you could still look at the option agreement. And there was consideration of exchange. It's recited in the option agreement. It's actually recited, I think, under Paragraph 5 of the option agreement. It says the consideration for giving this option is the sale of the farm. And it was accepted and agreed to by Whitetail. So Whitetail was a party to that agreement along with Cramsey. Thank you. In our brief, we make reference on page 10 to a reference to Corbin on Contracts, Paragraph 210. And I would like to quote this for the court. A promise is never held to be made enforceable by reason of past events, unless those past events have such a relation to the promise as to constitute its inducing cause. That's exactly what we have here, the past event being the sale of the land. Okay? But the sale of the land was the inducement, or the option agreement was giving the granting of the option agreement was the inducement for Cramsey to sell the farm. So this agreement, option agreement, again, all stems back to the original agreement. So it all flows together. And it's all part of that bargain forward exchange between the parties. But I point that out because I think it's very applicable to the facts on hand. Again, there was no disputed facts. I think Mr. Wright made reference to opening the door to allow this court to maybe possibly remand and discover more facts. The record is extremely clear that there is no disputed facts. The parties agreed to that. The court so found that there's no disputed facts. The only issue before the court, and this is another difference, was not whether there was this day lapse constitutes past consideration. The issue before the trial court was, was there a bargain forward exchange for this agreement? And there was, as I indicated before. Pavlik agreed, or Whitetail, Pavlik as agent of Whitetail, agreed and induced Cramsey to sell this farm by his agreement to grant back to Cramsey an option to purchase the farm in the future. This was bargained for, okay? And so in reliance of that agreement, a promise for a promise, the sale occurred, and the day thereafter, the grant of the option. And really when you think about it, you can't grant something that you don't have a right to grant. You can't grant an interest in real estate that you don't have yet. So it makes sense, too, that the grant of the option occurred shortly after the sale of the land. If you go back to the purchase agreement, and I believe the purchase agreement is in the record under Cramsey's response to the defendant's motion for summary judgment. It's attached, actually, to Betsy Roderick's affidavit. You'll see in that purchase agreement, besides paragraph 8, which is the agreement that he's going to grant back an option, you'll look at the last paragraph, miscellaneous provision, and it says something to the effect that these promises made herein are enforceable subsequent to the closing. My father was a drafter of that instrument, and I'm pretty sure, I just came across that on the way here. I'm pretty sure the reason why that provision was put in here is because we wanted to make sure that Pavlik lived up to his agreement subsequent to closing to granting the option. The reason I'm telling you this is it all goes back. This is another piece that reflects the party's intentions. Pavlik, through his company, Whitetail, did grant the option back. So he lived up to the agreement. It's the successor in interest, Mr. Callaway, who is not living up with the option that was in place and that followed his purchase of the land. That land was sold to Mr. Callaway. Our office was not involved in that transaction, but, of course, that option was placed off record with the Adams County Recorder of Deeds. And so whoever the attorney was who was involved in that transaction picked that up, that that option was there on that land. And you'll see in the deed, we're all humans and we have sympathy, but I'm telling the court this because it was made clear to Mr. Callaway that he was buying this property subject to the option. It was in the deed. The deed is in the record. I believe the deed is attached to the verified complaint, but it was also reflected in the title insurance commitment. So he was well aware that he was buying it subject to this option. So I want to make mention to the court about that. So in summary, what we're asking the court is to recognize what the trial court recognized is that there was a good faith bargain-forward exchange of promises between these parties. Promises being I'll sell you the land and I'll give you an option if you sell me the land. That's exactly what happened. Therefore, if there was a bargain-forward exchange of these promises, there was sufficient consideration. So the only issue before the court and the court so found, the trial court, was this bargain-forward exchange. The court used the word material, and Mr. Wright and his client tried to make significance of the use of the material in the order that this lapse in time was a material. But there's really no significance, I think, with the court using that word material. I think what the court was trying to express in his opinion was that there was sufficient consideration with this bargain-forward exchange. So we would respectfully ask this court to affirm the lower court's decision and require Mr. Callaway to adhere to the option agreement. Thank you. I'll be happy to answer any further questions. We have none. Thank you. Thank you. Rebuttal. Thank you very much. The underlying assumption of the entire argument of the plaintiffs is that Mr. Pavlik and Golden Triangle Whitetail are effectively the same entity in the eyes of the law. That just isn't the law in the state of Illinois without some facts alleged and proved that suggest to the contrary, some indication that he was acting in his corporate capacity. Under the eyes of the law, it's no different than if it was Mike Pavlik and Joe Smith rather than Mike Pavlik and Golden Triangle Whitetail. How about the fact that Golden Triangle executed the option? Pavlik promised there would be an option. Golden Triangle executed the option. Doesn't that indicate a cohesion between Golden Triangle and Pavlik? Your Honor, Pavlik promised to give an option himself individually under the first contract. Now, is that the language? I, Pavlik, personally, myself, promised to give an option? No. He said, you have an option. I'm going to give you an option. Your Honor, the parties to the contract were Pavlik individually and the Kremses. I think the court is bound to eliminate any extrinsic evidence to that outside of the face of the contract. What about the fact that you're alleging a lack of consideration? That's an exception to the parole evidence rule in contract cases. You allege there's no consideration, which is, in essence, then extrinsic evidence is admissible. We're alleging no consideration for the September 22, 1999 agreement. I don't believe there's any extrinsic evidence that the plaintiffs are attempting to introduce for that agreement. The July 24, 1999 agreement was never completed. The property wasn't conveyed to Mr. Pavlik. It was conveyed to a separate third party. Justice Cook, Golden Triangle did sign the option. There's no dispute in that regard. But the purpose of the rule for lack of consideration, that rule assumes that there was an agreement, that someone did agree and made a promise. But it says that if the consideration for that promise was conveyed in the past, that despite that agreement, the agreement is not enforceable because of a lack of consideration. And so that's what we're saying in this case. Additionally, to address just a couple of things that Mr. Staff addressed, the September 22 recitation of consideration being the conveyance of the property, the fact that an agreement refers to past consideration doesn't render that consideration sufficient under the law. And I shouldn't use the word sufficiency of consideration because that's not sufficient. But if there was no consideration, there was no consideration, despite what the face of the agreement said. The agreement also said that it was simultaneous conveyance. It wasn't. It was conveyed before. And then that gets back to the issue of whether there's any materiality requirement. Mr. Staff suggests that the court bases the decision on a bargain for exchange of promises. And that certainly wasn't expressed in the decision, or to my recollection, I could be wrong, discussed at much length other than by the plaintiffs in the final hearing. The court based its ruling on two things. That the passage of time was, in the court's judgment, not material. And upon uncontradicted statements in Betsy Roderick's affidavit. I think we've addressed both of those things in that the statements in Roderick's affidavit are not material to resolution of the matters before the court. And that there is no materiality requirement. And because those two findings were in error. You don't dispute any of the facts in her affidavit? We don't dispute. The answer to that question is dependent upon what a fact is in the affidavit. We don't dispute that Mr. Pavlik, and I'll try to explain. We don't dispute that Mr. Pavlik requested that the land be titled in the name of the president of Golden Triangle Whitetail at the time. I think those are the relevant facts. But the fact that he's the president is not. The fact that I'm the president of a corporation does not make every act of mine an act of the corporation. And that's why the law distinguishes between the two. There must be some facts in the surrounding circumstances that support a conclusion that this was an act of the corporation. We have three parties, the Cramsies, Mr. Pavlik, and Golden Triangle Whitetail. Two separate contracts. Two of those parties entered into the first contract. Two entered into the second contract. I don't think that this particular expression of the law is in our brief, but it's supported by what is in our brief. And I referenced this earlier. That a corporation in the eyes of the law is no different than a physical person. So without any representation, any supporting facts, that Mr. Pavlik was acting in his capacity as president. And they didn't allege those facts. They may be there. I wasn't there at the time. But what's before the court is the record in this case, and the record contains no such facts. Thank you, counsel. We'll take this matter under revising and recess.